UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HERLEY INDUSTRIES, INC., *d/b/a/* ULTRA ELECTRONICS HERLEY,     Plaintiff,<br><br>v.<br><br>R CUBED ENGINEERING, LLC,     Defendant. | : : : : : : : : : : | No. 5:20-cv-02888 |

**O P I N I O N**
**Defendant's Partial Motion for Summary Judgment, ECF No. 95 – Granted**

**Joseph F. Leeson, Jr.**                                                                 **October 12, 2021**
**United States District Judge**

## I.     INTRODUCTION

Plaintiff Herley Industries, Inc. ("Herley") filed suit against Defendant R Cubed

Engineering ("R3E"), stemming from a contractual relationship between the two parties formed

for the purpose of developing and selling avionics surveillance equipment.  Herley alleges

several claims against R3E, including breach of contract, conversion, violation of the Defend

Trade Secrets Act (DTSA), and violation of the Pennsylvania Uniform Trade Secrets Act

(PUTSA).  At the close of fact discovery, R3E filed the present motion for partial summary

judgment.  Specifically, R3E seeks summary judgment on Herley's DTSA claim, Count I,

Herley's PUTSA claim, Count II, and Herley's common law conversion of intellectual property

claim, Count III.

Following a review of the factual record, Herley has failed to make out a genuine dispute

of fact with respect to R3E's alleged use of its trade secrets.  Accordingly, as more fully

explained below, R3E's motion for summary judgment is granted, and judgment is entered in its favor on Counts I, II, and III.

## II.    PROCEDURAL HISTORY

Herley initiated this action with the filing of its Complaint on June 17, 2020.  *See* Compl., ECF No. 1.  On January 22, 2021, this Court granted in part R3E's motion to dismiss the Complaint.  *See* Opinion 1/22/21, ECF No. 38; Order 1/22/21, ECF No. 39.  On February 11, 2021, Herley filed an Amended Complaint.  *See* Am. Compl., ECF No. 41.  On March 17, 2021, R3E filed its Answer to the Amended Complaint.  *See* Ans., ECF No. 48.  The fact discovery period in this matter was marked by numerous discovery-related disputes between the parties— some involving third parties—that often required judicial intervention.  *See, e.g.*, Order 3/30/21, ECF No. 50; Order 4/02/21, ECF No. 51; Order 5/04/21, ECF No. 57; Order 6/14/21, ECF No. 69; Order 6/24/21, ECF No. 75; Order 7/01/21, ECF No. 76; Order 7/08/21, ECF No. 77; Order 7/13/21, ECF No. 80; Order 7/15/21, ECF No. 83; Order 8/23/21. ECF No. 91.  At the close of fact discovery, R3E filed the present motion for partial summary judgment.  *See* Mot., ECF No. 95.  Following a series of responses and replies, the motion is ready for review.  *See* Resp., ECF Nos. 98, 99; Reply, ECF No. 102.

## III.    UNDISPUTED MATERIAL FACTS

Herley and R3E are both corporations engaged in the development of avionics instrumentation equipment.  On or about May 23, 2014, the Department of Defense, Department of the Navy released a solicitation for bids under its Small Business Innovation Research Program ("SBIR").  *See* Def.'s Stmt. Undis. Facts ("DSUF") ¶ 3, ECF No. 95-14; Pl.'s Stmt. Undis. Facts ("PSUF") ¶ 3, ECF No. 98.  In that solicitation, the Navy sought proposals for the development of a "Micro-Identification 'Friend or Foe' transponder" ("Micro-IFF").  *See* DSUF

¶ 4; PSUF ¶ 4.  The stated purpose of this technology is to automatically identify whether an aircraft was friend or foe based on certain characteristics.  *See* DSUF ¶ 4; PSUF ¶ 4.  R3E submitted a proposal to the Navy for the Micro-IFF development program.  *See* DSUF ¶ 5; PSUF ¶ 5.  On September 9, 2014, R3E and Herley executed a Mutual Nondisclosure Agreement, in anticipation of working together on the Micro-IFF project.  *See* DSUF ¶ 6; PSUF ¶ 6.  R3E was awarded the Phase I contract by the Navy, and on January 16, 2015, R3E and Herley entered into a "Memorandum of Agreement" for the remaining work under Phase I.  *See* DSUF ¶ 12; PSUF ¶ 12.  In addition, this agreement anticipated the submission of a proposal for Phase II of the Navy SBIR Micro-IFF program.  *See* DSUF ¶ 12; PSUF ¶ 12.

On April 18, 2016, the Navy awarded R3E the Phase II contract for Micro-IFF.  *See* DSUF ¶ 17; PSUF ¶ 17.  On April 20, 2016, Herley and R3E entered into a "Teaming Agreement" in which Herley would act as the subcontractor for R3E on the Phase II contract. *See* DSUF ¶ 18-19; PSUF ¶ 18-19.  The Teaming Agreement included provisions that were designed to protect the intellectual property rights of both Herley and R3E.  *See* DSUF ¶ 23-24; PSUF ¶ 23-24.

On October 4, 2019, R3E sent Herley a "Notice of Non-Performance and Breach."  *See* DSUF ¶ 27; PSUF ¶ 27.  On January 3, 2020, R3E sent Herley a letter terminating the Teaming Agreement.  *See* DSUF ¶ 4; PSUF ¶ 4.

On June 17, 2020 Herley initiated this action with the filing of its Complaint.  Since then, Herley has amended its Complaint.  *See* Am. Compl.  Therein, Herley alleges claims for (1) violation of the DTSA, Count I, (2) violation of the PUTSA, Count II, (3) conversion of intellectual property, Count III, (4) breach of the Teaming Agreement, Count IV, (5) breach of Purchase Order 5, Count V, and (6) unjust enrichment, Count VI.  *See id.*  In the course of this

litigation, Herley has provided a list of information that it claims are its trade secrets, *see* Resp. 13-15, and Herley further alleges that R3E has misappropriated those trade secrets.  The use of these alleged trade secrets by R3E is at the center of the present motion.

## IV.    LEGAL STANDARDS

### A.    Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The court must

consider the evidence in the light most favorable to the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.      DTSA & PUTSA Claims – Review of Applicable Law**

The DTSA provides the owner of a trade secret a remedy when that trade secret is misappropriated.  *See* 18 U.S.C. 1836(b)(1).  In order to make out a claim under the DTSA, a plaintiff must show: (1) that they own a trade secret and (2) that the defendant misappropriated the trade secret.  *See Teva Pharmas. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018).  Similarly, the PUTSA provides injunctive relief for the "actual or threatened misappropriation" of trade secrets.  *See* 12 Pa. Stat. § 5303.

Both the DTSA and PUTSA define "trade secret" similarly, providing four factors for alleged trade secrets to be evaluated against:

(1)  The owner used "reasonable means" to keep the information secret;

(2)  The information derives actual or potential "independent economic value" from being secret;

(3)  The information is not "readily ascertainable by proper means"; and

(4)  Others, who cannot access the information, would derive "economic value from its disclosure or use."

*See Teva Pharmas.*, 291 F. Supp. 3d at 675 (citing 18 U.S.C. § 1839(3)).

A plaintiff must identify the trade secret with enough particularity "as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade."  *See Advanced Fluid Sys., Inc. v. Huber*, 381 F. Supp. 3d 362, 386 (M.D. Pa. 2019) (citing *Synygy, Inc. v. ZS Assocs.*, No. 07-3536, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013); *Dow Chem. Can., Inc. v. HRD Corp.*, 909 F. Supp. 2d 340 (D. Del. 2012)).

Generally, "vague references to products and information will not suffice." *See id.* (citing *Synygy*, 2013 WL 3716518, at *2).

In addition to alleging the existence of a trade secret, the claimant must also allege that the trade secret was misappropriated. The standard for "misappropriation" applicable to the present case is identical under both the DTSA and PUTSA. *See* 18 U.S.C. § 1839(5)(B); 12 Pa. Stat. § 5302(2) (defining "Misappropriation"). Both define misappropriation as including "***disclosure*** or ***use*** of a trade secret of another without express or implied consent . . . ." 18 U.S.C. § 1839(5)(B) (emphasis added); *see also* 12 Pa. Stat. § 5302(2) (defining "Misappropriation"). In order to show "use," a plaintiff must show that the defendant took "advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or accelerat[ing] research or development.'" *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450-51 (3d Cir. 2007)).

### C.    Conversion Claims – Review of Applicable Law

To succeed on a claim for conversion of a trade secret, a plaintiff must establish that:

(1) "it owns a trade secret;"

(2) the "trade secret was communicated to the defendant within a confidential relationship;" and

(3) the "defendant used the trade secret to the plaintiff's detriment."

*Teva Pharmas.*, 291 F. Supp. 3d at 680 (citing *Am. Hearing Aid Assocs. v. GN Resound N. Am.*, 309 F. Supp. 2d 694, 705 (E.D. Pa. 2004)).

### D.      Gist of the Action Doctrine – Review of Applicable Law

"The gist of the action doctrine 'precludes plaintiffs from recasting ordinary breach of contract claims into tort claims.'" *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, Civ. A. No. 11-4568, 2011 WL 6046923, at *6 (E.D. Pa. Dec. 6, 2011) (citing *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010)).  The doctrine bars a plaintiff from bringing tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*See Integrated Waste Sols., Inc. v. Goverdhanam*, Civ. A. No. 10-2155, 2010 WL 4910176, at *10 (E.D. Pa. Nov. 30, 2010) (citing *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).  In the context of a conversion claim, courts have dismissed such claims under the gist of the action doctrine "where the alleged entitlement to the chattel arises solely from the contract between the parties."  *See Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 622 (E.D. Pa. 2010) (citing *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 777 (M.D. Pa. 2008)).

## V.      DISCUSSION

R3E seeks judgment in its favor on Herley's DTSA claim, PUTSA claim, and common law conversion of intellectual property claim.[1]  First, R3E argues that the majority of information

---

[1]      At the outset, Herley claims that R3E's motion is untimely and should therefore be dismissed.  This argument is unavailing.  On August 23, 2021, the deadline for the filing of all dispositive motions, R3E filed a motion to file its summary judgment motion under seal.  *See* ECF No. 92.  Simultaneously, R3E provided an email copy of the summary judgment motion to this Court and to opposing counsel.  This Court granted R3E's motion to seal on August 24, 2021; however, due to confusion regarding pandemic-related changes to filing procedures for sealed documents, R3E's motion for summary judgment was not officially docketed until August 31, 2021.  Notwithstanding, in light of R3E's timely provision of its motion for summary judgment to both this Court and opposing counsel, this Court considers the motion timely filed.

that Herley alleges either fails to qualify as a trade secret or was not communicated to R3E. Second, R3E argues that Herley fails to raise a genuine dispute of fact regarding whether R3E used or disclosed the trade secrets at issue.  Finally, R3E argues that Claims I and II are barred by the gist of the action doctrine.[2]

Assuming, *arguendo*, that Herley has set forth at least one trade secret, Counts I, II, and III all require Herley to show some use of its trade secret.  *See* 18 U.S.C. § 1839(5)(B); 12 Pa. Stat. § 5302(2); *Teva Pharmas.*, 291 F. Supp. 3d at 680 (citing *Am. Hearing Aid Assocs.*, 309 F. Supp. 2d at 705).  In an effort to establish that its trade secrets were used, Herley makes four arguments, each of which is addressed in turn below.

A.      **Herley fails to provide any evidence that R3E publicly disclosed its trade secrets.**

First, Herley argues that R3E disclosed Herley's trade secrets to the "public domain." *See* Resp. 43.  Herley argues that this disclosure qualifies as misappropriation under the governing provisions of Counts I, II and III.  However, Herley fails to provide any evidence to support that any such disclosure took place.

The notion that R3E disclosed trade secrets in the "public domain" stems from an email communication that R3E's RaNae Contarino (RContarino) sent to Herley's David Gallagher on

---

[2]     Because this Court concludes that there is no genuine dispute of fact over whether R3E used or disclosed Herley's trade secrets, this Court need not reach the question of whether these claims are barred by the gist of the action doctrine.  Notwithstanding, had this Court found a genuine dispute of fact, case law in this Circuit suggests that DTSA and PUTSA claims may proceed alongside breach of contract claims that cover the same trade secrets.  *See Pittsburgh Logistics Sys., Inc. v. LaserShip, Inc.*, 2:18-cv-1382, 2019 WL 2443035, at *9 (W.D. Pa. June 12, 2019) (citing *Brown & Brown*, 745 F. Supp. 2d at 624) (concluding that DTSA and PUTSA claims "can be pursued concurrently with a breach of contract claim covering the same information").  The gist of the action doctrine bars only those tort claims that arise solely from a contract between the parties, and "[b]oth the DTSA and PUTSA create private rights of actions that are enforceable in the absence of a mutual consensus between contracting parties."  *See id.*

May 10, 2020.  *See* Am. Compl. at Ex. G, ECF No. 41-7.  The email was sent in response to a

letter, sent by Herley to R3E, which demanded return of any of Herley's outstanding

"confidential information" following the termination of the Teaming Agreement.  *See id.* at Ex.

F, ECF No. 41-6.  In the email, RContarino stated the following with respect to the work

performed by Herley and R3E:

> All work done jointly would result in joint ownership of the information.  And, the
> product of our work, including any Ultra-Herley contributions, if any, were placed
> in the public domain and shared with the sponsor. We are simply aware of no
> Confidential Information that was provided by Ultra-Herley that is subject to return
> upon termination of the agreement.

*See id.* at Ex. G.

When asked about this email in her deposition, RContarino stated that she understood this

email to indicate that the work product of Herley and R3E was shared with the sponsors of the

government program under which the Micro-IFF was being developed.  *See* Mot. at Ex. J

("RContarino Dep.") 289:11-21, ECF No. 95-10.  RContarino further indicated that "[n]one of

this information was ever disclosed to anyone outside of the government."  *See id.*

Herley insists that this email alone serves as evidence that R3E disclosed "Herley['s]

intellectual property" in "the public domain."  *See* Resp. 43.  However, contrary to Herley's

assertion, R3E's email does not, on its face, indicate that Herley's trade secrets were improperly

disclosed.  The email indicates that the "product of *our* work" was "placed in the public

domain."  *See* Am. Compl. at Ex. G.  At most, the email indicates that the jointly-created work

product of R3E and Herley was put in to the public domain, which RContarino indicated referred

to the sharing of information with the government sponsors of the Micro-IFF development

program.  *See* RContarino Dep. 289:11-21.  The email does not indicate that Herley's own trade

secrets were improperly disclosed.  In fact, the email states that R3E was unaware of any

outstanding Herley trade secrets that were subject to return following termination of the Teaming Agreement.  *See* Am. Compl. at Ex. G.

In response, Herley provides no additional evidence, beyond the email itself, to suggest that any such disclosure of Herley's trade secrets was made.  Herley does not identify (1) which of its trade secrets were disclosed to the public, (2) where this disclosure was made, or (3) to whom this disclosure was made.  Rather, Herley asserts that the email itself generates a genuine dispute of material fact regarding this alleged disclosure.  While the fact of a defendant's alleged use of a trade secret is certainly material, Herley fails to raise a *genuine* dispute.  *Anderson*, 477 U.S. at 248 (holding dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).  Even when the facts are viewed in a light most favorable to Herley, the record is devoid of any evidence of what trade secrets were disclosed, where they were disclosed, or to whom they were disclosed.  Accordingly, in the absence of that crucial evidence, a reasonable jury could not find that Herley has successfully established disclosure of its trade secrets.  Accordingly, summary judgment is appropriate.

**B.     Herley has failed to show that R3E's development of a prototype Micro-IFF warrants a finding that R3E used Herley's trade secrets.**

Next, Herley alleges that R3E pursued the development of the Micro-IFF after its relationship with Herley terminated.  *See* Resp. 44.  Herley alleges that R3E's work with a third party produced a fully functioning prototype Micro-IFF.  *See id.*  Herley appears to argue, by inference, that R3E's success in developing a fully functioning prototype of the Micro-IFF must be based on the use of Herley's trade secrets.

As with its last argument, Herley points to no evidence to raise a genuine dispute over this fact.  Rather, Herley asks this Court to draw an incredible inference; that R3E's success in

developing a prototype Micro-IFF must have been based on its improper use of Herley's trade

secrets.  In its statement of facts, Herley asserts that R3E "admitted that the Micro-IFF was

designed by engineers at Herley."  *See* PSUF ¶ 54.  From this, Herley appears to argue that any

subsequent successful prototype must have been based on Herley's own work.

However, the deposition of Michael Contarino ("MContarino") that Herley cites in

support of this proposition does not at all suggest that Herley exclusively designed the Micro-

IFF; rather, it indicates the exact opposite.  *See* Resp. at Ex. O, ("Mike Contarino Dep.") 232:5-

10, ECF No. 98-13.  When asked whether "there is anything . . . that Herley developed on it's

[sic] own in regard to the micro IFF project," MContarino stated, "I would have to say no."  *See*

*id.* 233:18-25.  MContarino indicated that Herley "implemented a detailed design of the R Cubed

proposal."  *See id.* 233:24-25.

Herley has presented no evidence that would warrant an inference that R3E's successful

creation of a prototype Micro-IFF must have been based on its usage of Herley's trade secrets.

Accordingly, in the absence of any such evidence, a reasonable jury could not find that Herley

has carried its burden of establishing the "use" element of each of Counts I, II, and III.

Therefore, summary judgment is appropriate.

**C.     Herley's argument that R3E's "maintenance" of trade secrets amounts to "use" fails as a matter of law.**

Next, Herley asserts that R3E's "refusal to return, and its ongoing maintenance of the

information at issue *is* use."  *See* Resp. 44 (emphasis in original).  Herley's argument fails for

two reasons.  First, acquisition of a trade secret amounts to misappropriation only where the

initial acquisition is improper.  Second, "use," as the term is used in the DTSA and PUTSA,

requires more than mere maintenance.

Herley takes the position in its response that misappropriation can include "the mere 'acquisition' of a trade secret . . . ." *See* Resp. 42. While that statement of the law is partially correct, it omits a key portion of the governing statutes. Both the DTSA and PUTSA attach liability only for "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was *acquired by improper means*." 18 U.S.C. § 1839(5)(A); 12 Pa. Stat. § 5302(1) (emphasis added). Accordingly, liability only attaches under these provisions where the trade secret was acquired by improper means in the first instance. Here, the parties do not disagree—and Herley emphatically alleges—that the Teaming Agreement anticipated the parties would exchange trade secrets and other confidential information during their relationship.[3] Thus, Herley cannot now assert that the trade secrets it shared with R3E as part of its business relationship were improperly obtained by R3E at the outset. Accordingly, in the absence of any facts that the trade secrets were improperly acquired, a reasonable jury could not find that Herley has carried its burden to show misappropriation through acquisition on Counts I, II, and III.

Second, Herley seeks to define "use" of a trade secret to included mere "maintenance" thereof. However, this argument is unavailing. In order to show "use," a plaintiff must show that the defendant took "advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as "'assist[ing] or accelerat[ing] research or development.'" *See Oakwood*, 999

---

[3] As the Teaming Agreement states, "[e]ach party acknowledges that it shall, as a consequence of this Agreement, have access to the proprietary, confidential and trade secret information of the other, including, but not limited to, information concerning [] designs, products, manufacturing and other processes and procedures, finances and business plans and other non-public information . . . ." *See* Am. Compl. at Ex. A ("Teaming Agreement"), ECF No. 41-1.

F.3d at 910 (quoting *Gen. Universal Sys.*, 500 F.3d at 450-51); *see also Use*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "Use" as "to employ for the accomplishment of a purpose," "to put into practice or employ habitually," "the application or employment of something").  Here, Herley has failed to show how mere maintenance of a trade secret would serve to generate some "economic benefit, competitive advantage, or other commercial value." *See id.*  Rather, both the case law and accompanying definitions make clear that "use" requires the application or employment of the trade secret, to some extent, so as to achieve a tangible benefit for the appropriating party.  Herley fails to provide evidence that R3E used its trade secrets, and instead, Herley wishes to rely on R3E's maintenance of the trade secrets to establish "use."  To define "use" to include mere "maintenance" would be to punish acquisition by another name, *sans* the statutory limitation that only improper acquisition in the first instance be prohibited.  Accordingly, Herley's argument is unavailing, and summary judgment is appropriate.

> **D.  This Court declines Herley's invitation to presume the critical issue of whether R3E has used Herley's trade secrets.**

In the absence of any affirmative showing that R3E used or disclosed Herley's trade secrets, Herley asks this court to presume the issue in its favor.  *See* Resp. 44-45.  Herley bases this request primarily on its outstanding motion for reconsideration of sanctions against R3E, alleging that R3E engaged in "willful attempts to obfuscate discovery on the topic of [R3E's] use."  *See id.*  However, such a presumption would be inappropriate under these circumstances, and accordingly, the Court declines to presume that R3E used Herley's trade secrets.

At the outset, a plaintiff's burden on summary judgment weighs heavily against presuming an issue as critical as this one.  Once a defendant shows that no genuine dispute

exists, the non-moving party must then go beyond the pleadings and demonstrate *specific material facts* which give rise to a genuine issue.  *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita*, 475 U.S. at 586.  Rather than carry its affirmative burden, Herley essentially asks this Court to presume one of the two major elements of a trade secrets claim in its favor.  Accordingly, Herley's requested presumption is at odds with its burden at this stage of a summary judgment motion.

Moreover, the circumstances surrounding the fact discovery period in this matter do not warrant the harsh sanction of presumption of a critical and central issue to the litigation.  The Third Circuit has cautioned that a district court may only enter a presumption of this sort "if it finds that a 'party acted with the intent to deprive another party of the information's use in the litigation.'"  *See Arana v. Temple Univ. Health Sys.*, 776 F. App'x 66, 70-71 (3d Cir. 2019) (quoting FED. R. CIV. P. 37(e)(2)(A)-(B)).

Although Herley asserts that R3E acted "with a clear intent to deprive Herley" of certain information, Herley provides no evidence to support this contention.  Throughout the discovery process, this Court heard and addressed a number of discovery disputes between the two parties, including some which involved third parties.  In resolving each dispute, this Court sought to permit discovery to the greatest extent allowable under the Federal Rules of Civil Procedure, while remaining mindful of the producing party's right to have their own trade secrets protected from unwarranted disclosure.  To those ends, this Court carefully tailored multiple discovery requests and subpoenas *duces tecum*.

Notwithstanding Herley's general discontent with the discovery process, it has not presented any evidence that R3E acted with the intent to deprive it of information for litigation.

Accordingly, this Court does not find it appropriate to presume the outcome of such a critical issue to the litigation.[4]

## VI.   CONCLUSION

Following a review of the parties' arguments and the factual record, summary judgment is appropriate on Herley's Counts I, II, and III.  Once R3E established that the record contained no genuine dispute regarding whether it used or disclosed Herley's trade secrets, the burden shifted to Herley to establish that a genuine dispute did in fact exist.  Notwithstanding, Herley fails to point to any facts in the record that would establish that R3E used or disclosed Herley's trade secrets.  Even when the facts are viewed in a light most favorable to Herley, a reasonable jury could not find that Herley has sufficiently established that R3E used or disclosed its trade secrets.  This failure is fatal to Herley's claims in Counts I, II, and III, as each of these claims require that Herley establish some use of its trade secrets by R3E.  Therefore, judgment is entered in R3E's favor on Counts I, II, and III.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[4]      For these same reasons, Herley's motion for reconsideration of sanctions, ECF No. 87, is similarly denied.